UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
JAYLIN RYAN

                                                              **COMPLAINT**

                        Plaintiff,

                                                    **JURY DEMAND**

       -against-

THE CITY OF NEW YORK, BRIAN P. MAHON, as Sergeant,
46th Precinct, JOEL K. AYALA, as Sergeant, 46th Precinct,
JAMES G. GEBERTH, as Police Officer, 46th Precinct,
CRYSTAL L. DONES, as Police Officer, 46th Precinct,
JOHN MICHAEL B. MEDINA, as Police Officer, 46th Precinct,
PATRICK JEAN, as Police Officer, 46th Precinct, JOHN
DOES 1 – 5, each sued individually and in their official
capacities as employees of Defendant THE CITY OF NEW
YORK

                                    Defendants
-------------------------------------------------------------------------------x

      The Plaintiff JAYLIN RYAN through his attorney The Sanders Firm, P.C., files this federal complaint against Defendants THE CITY OF NEW YORK, BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, PATRICK JEAN, and JOHN DOES 1 – 5, respectfully set forth and allege that:

## INTRODUCTION

      On December 28, 2024, at approximately 12:25 AM, Plaintiff JAYLIN RYAN, a 21-year-old Black male Bronx resident with no criminal record, stood beside his mother's 2017 Mercedes-Benz GLS SUV (Connecticut Registration BB84063), which was briefly double-parked outside 187 East 188th Street in the Bronx. Plaintiff was lawfully and peacefully ensuring that his female friend, Carolyn Martinez, safely entered her nearby building when several uniformed officers from the New York City Police Department—including Defendants BRIAN

P. MAHON, JOEL K. AYALA, and JAMES G. GEBERTH—aggressively approached and demanded identification without legal justification or probable cause.

When Plaintiff calmly asked, "What did I do wrong?", officers violently slammed him against the vehicle. While physically restrained by multiple officers, Defendant JOEL K. AYALA punched Plaintiff in the face with a closed fist, causing immediate and severe pain. During transport to the 46th Precinct, Defendant MAHON remarked, "This is what happens if you do not give the police what they ask for; you'll get punched in the face." At the precinct, when confronted by Plaintiff's mother, Defendant MAHON doubled down: "He's a Black kid driving a Mercedes-Benz, and the windows are all tinted. Vehicles like that—they [police] search for drugs and guns."

Once at the precinct, Defendant GEBERTH issued Summons No. 4447558422, falsely charging Plaintiff with Disorderly Conduct under Penal Law § 240.20(7). In the factual section—signed under penalty of perjury—GEBERTH alleged that Plaintiff "refused [a] lawful order to provide [his] driver's license" and "stated he had a license, but was not going to present it." This statement was not only demonstrably false, but—even if credited—it failed to satisfy the statutory elements of § 240.20(7), which requires that a defendant create a hazardous or physically offensive condition without a legitimate purpose.

Despite the absence of probable cause and the clear falsity of the allegations, Defendants MAHON, AYALA, GEBERTH, and the unnamed Desk Officer failed to void the arrest, in direct violation of NYPD policy. Other officers—Defendants CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, and PATRICK JEAN—stood by and failed to intervene or report the misconduct. After Plaintiff was already in custody, Defendant JEAN issued two additional

summonses (for double parking and parking near a fire hydrant), which appear plainly retaliatory.

Following his release, Plaintiff sought emergency medical care at Lincoln Hospital in the Bronx, where he was diagnosed with a fractured jaw. On January 16, 2025, a Bronx Criminal Court judge dismissed the disorderly conduct charge as legally insufficient.

The totality of this incident reflects egregious violations of Plaintiff's rights under the Fourth and Fourteenth Amendments, as well as intentional racial discrimination. Under the framework set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), factors such as racially charged statements, procedural deviations, post hoc retaliatory summonses, and the knowing perpetuation of fabricated charges all constitute powerful evidence of discriminatory intent. This case illustrates how both implicit and explicit racial bias can infect routine police encounters, escalate into constitutional violations, and leave victims physically injured, emotionally traumatized, and wrongfully criminalized.

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 128 U.S.C. §§ 1331, 1343, 1367 and 2201-2202 to secure protection of and to redress deprivation of rights secured by:

      a.      the Civil Rights Act of 1871, 42 U.S.C. § 1983

      b.      New York City Administrative Code § 8-107(17)

2.      The unlawful practices, violations of plaintiff's civil rights complained of herein were committed within the Southern District of New York.

## PROCEDURAL REQUIREMENTS

3.      Plaintiff JAYLIN RYAN has filed suit with this Court within the applicable statute of limitations period.

4.     Plaintiff JAYLIN RYAN is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

5.     On January 10, 2025, Plaintiff JAYLIN RYAN filed a single, duly verified Notice of Claim with the Office of the Comptroller of the City of New York. The Notice of Claim was submitted within ninety (90) days of the December 28, 2024 incident in accordance with the requirements of New York General Municipal Law § 50-e, and it set forth each Plaintiff's claims under the New York City Human Rights Law, Administrative Code § 8-107(17). More than thirty (30) days have elapsed since its filing, and the City of New York has neither settled nor adjusted the claim.

## PLAINTIFF

6.     At all relevant times, Plaintiff JAYLIN RYAN remains employed by Krispy Kreme, where he works in the production of doughnuts. Plaintiff is a hard-working, law-abiding young adult with no prior criminal history. He takes pride in his work and supports his family through his employment. As a result of Defendants' unlawful conduct—including his false arrest, physical assault, and public humiliation—Plaintiff experienced disruption to his work schedule, emotional distress affecting his job performance, and reputational harm within his community and workplace.

7.     Since the incident, Plaintiff JAYLIN RYAN has developed a persistent fear of law enforcement officers and avoids public spaces where police presence is visible. He has become socially withdrawn and now copes through excessive work hours, which have made him a self-described workaholic.

8.     Plaintiff JAYLIN RYAN continues to suffer intermittent pain in his jaw and has ongoing difficulty chewing solid food, which interferes with his ability to eat normally and

maintain his previous physical well-being. These physical injuries, combined with psychological trauma, have materially diminished his quality of life.

## DEFENDANTS

9.      Defendant THE CITY OF NEW YORK is a municipal corporation organized and existing under the laws of the State of New York. At all relevant times, THE CITY OF NEW YORK, through its agency the New York City Police Department ("NYPD"), was responsible for the formulation, implementation, and enforcement of policies, practices, procedures, and customs used by its police officers, including the individual Defendants named herein. THE CITY OF NEW YORK is liable for the acts and omissions of its employees committed within the scope of their employment pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and the New York City Human Rights Law, Administrative Code § 8-107.

10.      Defendant BRIAN P. MAHON (Shield No. 4797; Tax Registry No. 955116) is and was at all relevant times a Sergeant with the New York City Police Department, acting under color of state law and within the scope of his employment. He is sued individually and in his official capacity. Upon information and belief, Defendant MAHON has served with the Department since approximately July 2013 and, at the time of the incident, was assigned to the 46th Precinct. As the supervising officer on the scene, Defendant MAHON authorized, directed, and participated in the unlawful seizure, use of excessive force, and racial profiling of Plaintiff JAYLIN RYAN. During the unlawful transport of Plaintiff, Defendant MAHON stated, "This is what happens if you do not give the police what they ask for; you'll get punched in the face." At the precinct, Defendant MAHON further justified the misconduct by stating, "He's a Black kid driving a Mercedes-Benz, and the windows are all tinted. Vehicles like that—they [police] search for drugs and guns." These explicit, racially motivated statements demonstrate that

Defendant MAHON's actions were driven by bias, not law enforcement necessity. Despite being the ranking officer, Defendant MAHON failed to stop or report the excessive force, failed to VOID the false arrest, and failed to ensure Plaintiff received medical treatment. His actions and omissions reflect deliberate indifference, abuse of authority, and ratification of unconstitutional conduct.

11.     Defendant JOEL K. AYALA (Shield No. 4081; Tax Registry No. 954509) is and was at all relevant times a Sergeant with the New York City Police Department, acting under color of state law and within the scope of his employment. He is sued individually and in his official capacity. Upon information and belief, Defendant AYALA has served with the Department since approximately July 2013 and, at the time of the incident, was assigned to the 46th Precinct. Defendant AYALA personally participated in the unlawful arrest and used objectively unreasonable and excessive force when he punched Plaintiff JAYLIN RYAN in the face while Plaintiff was physically restrained by multiple officers. The force used was gratuitous, punitive, and without legal justification. Defendant AYALA made no effort to deescalate the encounter and failed to report or document the assault. His conduct reflects a pattern of bias-based policing, and he took no steps to prevent, mitigate, or remedy the constitutional violations that occurred in his presence.

12.     Defendant JAMES G. GEBERTH (Shield No. 19747; Tax Registry No. 969724) is and was at all relevant times a Police Officer with the New York City Police Department, acting under color of state law and within the scope of his employment. He is sued individually and in his official capacity. Upon information and belief, Defendant GEBERTH has served with the Department since approximately November 2020 and was assigned to the 46th Precinct at the time of the incident. Defendant GEBERTH fabricated charges against Plaintiff JAYLIN RYAN

by issuing Summons No. 4447558422 for Disorderly Conduct under Penal Law § 240.20(7), falsely alleging under penalty of perjury that Plaintiff "refused a lawful order to provide his driver's license" and "stated he had a license but was not going to present it." Not only was this statement knowingly false, but it does not satisfy the statutory elements of § 240.20(7), which requires the creation of a hazardous or physically offensive condition without a legitimate purpose. Defendant GEBERTH also discouraged emergency medical technicians from treating Plaintiff, despite Plaintiff's repeated complaints of injury. His actions constitute fabrication of evidence, denial of medical care, and deliberate indifference to Plaintiff's constitutional rights.

13.    Defendant PATRICK JEAN (Shield No. 24116; Tax Registry No. 970619) is and was at all relevant times a Police Officer with the New York City Police Department, acting under color of state law and within the scope of his employment. He is sued individually and in his official capacity. Upon information and belief, Defendant JEAN has served with the Department since approximately December 2020 and, at the time of the incident, was assigned to the 46th Precinct. After Plaintiff JAYLIN RYAN had already been unlawfully arrested and transported to the precinct, Defendant JEAN issued two traffic summonses—one for double parking and one for parking near a fire hydrant—in an apparent effort to manufacture a post hoc justification for the unlawful stop and seizure. These tickets were issued hours after the incident and are facially retaliatory. Defendant JEAN took no steps to investigate the arrest, intervene in the excessive use of force, or report any misconduct, and his actions reflect complicity in and ratification of unconstitutional policing practices.

14.    Defendant CRYSTAL L. DONES (Shield No. 6022; Tax Registry No. 964644) is and was at all relevant times a Police Officer with the New York City Police Department, acting under color of state law and within the scope of her employment. She is sued individually and in

her official capacity. Upon information and belief, Defendant DONES has served with the Department since approximately October 2017 and was assigned to the 46th Precinct at the time of the incident. Defendant DONES was present during the unlawful seizure and physical assault of Plaintiff JAYLIN RYAN, yet failed to intervene, report, or take any reasonable steps to prevent or mitigate the violations. She stood by as Plaintiff was falsely arrested, punched in the face while restrained, and later denied medical treatment. Defendant DONES's silence and inaction in the face of constitutional violations constitute deliberate indifference and a failure to intervene under clearly established law.

15.    Defendant JOHN MICHAEL B. MEDINA (Shield No. 2074; Tax Registry No. 969974) is and was at all relevant times a Police Officer with the New York City Police Department, acting under color of state law and within the scope of his employment. He is sued individually and in his official capacity. Upon information and belief, Defendant MEDINA has served with the Department since approximately November 2020 and was assigned to the 46th Precinct at the time of the incident. Defendant MEDINA was present for the unlawful stop, the use of excessive force, and the fabrication of charges against Plaintiff JAYLIN RYAN, yet took no action to intervene, report the misconduct, or prevent the ongoing violation of Plaintiff's rights. His failure to act, despite actual knowledge of the unlawful conduct, constitutes deliberate indifference and renders him liable for the constitutional deprivations suffered by Plaintiff.

16.    Defendants JOHN DOE 1 through JOHN DOE 5 are as-yet-unidentified uniformed members of the NEW YORK CITY POLICE DEPARTMENT who participated in or failed to prevent the unlawful stop, false arrest, excessive force, denial of medical care, fabrication of evidence, and/or failure to intervene with respect to Plaintiff JAYLIN RYAN. At all relevant times, each was acting under color of state law and within the scope of their

employment. Each is sued individually and in his or her official capacity. Plaintiff will seek leave to amend this Complaint to name these Defendants once their identities are ascertained through discovery.

17.     The JOHN DOE Defendants participated in, assisted with, or failed to intervene in the unlawful stop, detention, assault, arrest, and subsequent prosecution of Plaintiff JAYLIN RYAN**.** Several of these unidentified officers physically restrained Plaintiff while he was compliant and unarmed; at least one participated in violently slamming him against a vehicle, and others stood by as Defendant JOEL K. AYALA struck Plaintiff in the face while he was restrained. Other JOHN DOE officers failed to activate or preserve body-worn camera footage in violation of NYPD policy, thereby obstructing the accurate documentation of events and impeding accountability. The JOHN DOE Defendants made no effort to de-escalate the encounter, prevent the unlawful use of force, or report or void the false arrest—despite having actual or constructive knowledge of its illegality. Their actions and omissions contributed to an unlawful search and seizure, the use of excessive force, failure to intervene, and racially motivated policing, in violation of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the New York City Human Rights Law.

## **BACKGROUND**

18.     On December 28, 2024, at or around 12:25 AM, Plaintiff JAYLIN RYAN was double parked near a fire hydrant at 187 East 188th Street in the Bronx, waiting to ensure his female friend, Carolyn Martinez (21), safely entered her building. Mr. Ryan stood beside his mother's 2017 Mercedes Benz GLS SUV (CT Registration: BB84063), while his younger sister (17) was seated in the front passenger seat. This area is known to be dangerous, and Mr. Ryan was acting lawfully to ensure his friend's safety.

19.     As Plaintiff JAYLIN RYAN stood next to the vehicle, approximately 4-6 uniformed NYPD officers, including Defendant BRIAN P. MAHON (Shield No. 4797, Tax Registry No. 955116), approached and requested his identification. When the Plaintiff asked, what he had done wrong, multiple officers, including MAHON, grabbed him, threw him violently against his mother's vehicle, and handcuffed him.

20.     While Plaintiff JAYLIN RYAN was physically restrained and being handcuffed by several officers, Defendant JOEL K. AYALA (Shield No. 4081, Tax Registry No. 954509) punched him with a closed fist on the right side of his face, causing substantial pain.

21.     Plaintiff JAYLIN RYAN was transported to the 46th Precinct in Defendant BRIAN P. MAHON's police vehicle. During transport, MAHON made the retaliatory comment: *"This is what happens if you do not give the police what they ask for; you'll get punched in the face."*

22.     At the 46th Precinct, Defendant JAMES G. GEBERTH (Shield No. 19747, Tax Registry No.: 969724) informed the Desk Officer that Plaintiff JAYLIN RYAN was arrested for Disorderly Conduct (PL 240.20(7), despite the lack of probable cause. Instead of voiding the arrest or reporting the false arrest and excessive force, the Desk Officer allowed the detention to proceed.

23.     Plaintiff JAYLIN RYAN repeatedly requested medical assistance for pain on the left side of his face. Defendant JAMES G. GEBERTH eventually called for an ambulance, but when the EMTs arrived, he discouraged treatment, stating Plaintiff would soon be released because his mother was present.

24.     Ms. Nazima Royster, Plaintiff JAYLIN RYAN's mother, arrived at the precinct before the ambulance and confronted Defendant BRIAN P. MAHON, who stated:

*"When you do not follow protocol, this is what happens. You get punched in your face."*

Mahon further remarked:

*"He's a Black kid driving a Mercedes Benz, and the windows are all tinted. Vehicles like that*

*they [meaning the police] search for drugs and guns."*

    25.    Mr. Ryan was released approximately 15 minutes later with the following

summonses:

- **Summons Serial No.: 4447558422** for Disorderly Conduct (PL 240.20(7)), issued by Defendant JAMES G. GEBERTH.
- **Summons Serial No.: 149917136-5** for Double Parking (Code 46), issued by Police Defendant PATRICK JEAN (Shield No. 24116, Tax Registry No.: 970619).
- **Summons Serial No.: 149495807-7** for Parking Near a Fire Hydrant (Code 40), issued by Defendant PATRICK JEAN.

    26.    None of those mentioned above police officers including, Defendants CRYSTAL

L. DONES (Shield No. 6022, Tax Registry No.: 964644) nor JOHN MICHAEL B. MEDINA

(Shield No.: 2074, Tax Registry No.: 969974), intervened in the false arrest or use of excessive

force.

## POST ARREST

    27.    Following his release from NYPD custody in the early morning hours of

December 28, 2024, Plaintiff JAYLIN RYAN, still experiencing intense facial pain, swelling,

and difficulty speaking and chewing, voluntarily presented to the emergency department at

Lincoln Hospital in the Bronx for medical evaluation. Despite the NYPD's failure to timely

provide medical care during his detention, Plaintiff independently sought treatment without

delay. Upon clinical examination and imaging, hospital staff diagnosed Plaintiff with a fracture

to the jawbone, consistent with blunt force trauma. Plaintiff was discharged with pain

management instructions and dietary restrictions due to his inability to chew solid foods. He was

advised to follow up with maxillofacial specialists and has since experienced intermittent jaw

pain, difficulty eating, disrupted sleep, and heightened anxiety around interactions with law enforcement. The injury has had ongoing consequences for Plaintiff's physical health, emotional well-being, and ability to perform his job duties at Krispy Kreme. The fracture and associated trauma were the direct result of the unlawful use of force by Defendant JOEL K. AYALA and the deliberate indifference of all other Defendants who stood by and failed to intervene or seek care on Plaintiff's behalf.

28.    On January 16, 2025, Plaintiff JAYLIN RYAN appeared in Bronx Criminal Court, Summons Appearance Part (SAP), under Docket No. 2025SX000434, to answer to the Disorderly Conduct charge issued by Defendant JAMES G. GEBERTH and memorialized in Summons No. 4447558422. After reviewing the factual allegations contained in the summons— namely, that Plaintiff allegedly refused a lawful order to provide his driver's license—the presiding judge determined that the alleged conduct did not satisfy the statutory elements of Penal Law § 240.20(7), which requires proof that a defendant created a hazardous or physically offensive condition with no legitimate purpose. The court concluded that even if the factual allegations were accepted as true, they were legally insufficient to establish a prima facie case of disorderly conduct. Accordingly, the judge immediately dismissed the charge on the record, recognizing that the NYPD's legal theory was unsupported by the law and that the summons should never have been issued. This judicial finding underscores the baseless and retaliatory nature of the arrest and prosecution initiated by Defendant GEBERTH and ratified by Defendants BRIAN P. MAHON, JOEL K. AYALA, and the unnamed Desk Officer, none of whom took steps to VOID the arrest despite having actual knowledge of its impropriety.

**OFFICER PROFILES**

**SUMMARY OF DEFENDANT BRIAN P. MAHON'S HISTORY OF MISCONDUCT AND SUPERVISORY FAILURE**

29.    Defendant BRIAN P. MAHON, who is currently assigned to the NYPD's 46th

Precinct, has a long and troubling history of misconduct involving excessive force, unlawful

stops, credibility concerns, and racially biased policing. His tenure in the NYPD began in JULY

2013. Despite a substantiated disciplinary record and multiple civil rights settlements, Defendant

BRIAN P. MAHON was promoted to the rank of SERGEANT and transferred to high-

enforcement commands including the 52nd Precinct and Narcotics Borough Manhattan North,

before being assigned to the 46th Precinct in July 2024. In the year preceding the incident

involving Plaintiff JAYLIN RYAN, Defendant BRIAN P. MAHON earned over $242,000 in

total compensation.

30.    Defendant BRIAN P. MAHON has been named in at least 12 citizen complaints,

involving 40 separate allegations, 13 of which were substantiated by the Civilian Complaint

Review Board (CCRB). These substantiated findings include:

- Use of Nightstick as a Club (2)
- Physical Force (2)
- Abuse of Authority – Entry of Premises
- Abuse of Authority – Stop (2)
- Abuse of Authority – Frisk (3)
- Abuse of Authority – Failure to Provide Right to Know Act (RTKA) Card
- Abuse of Authority – Other
- Untruthful Statement – False Official Statement

31.    Among these complaints, multiple incidents resulted in Command Discipline, and

formal charges were substantiated in at least five cases. In one case, Defendant BRIAN P.

MAHON was found guilty by the NYPD's Administrative Prosecution Unit (APU) of improperly

using force and making false official statements, resulting in dismissal probation and forfeiture

of 40 vacation days.

32.     In addition, Defendant BRIAN P. MAHON is listed on the NYPD's "Adverse Credibility" list—an internal classification for officers with sustained credibility issues that could materially impact criminal and civil proceedings in which they testify.

33.     Beyond his administrative misconduct record, Defendant BRIAN P. MAHON has been named in ten (10) known civil rights lawsuits in federal and state courts, generating over $485,500 in settlements for the CITY OF NEW YORK. Notable cases include:

- CAMPBELL v. CITY OF NEW YORK, et al. (2018 BCSC): $117,500 settlement for unlawful stop, racial profiling, strip search, and battery.
- FERNANDEZ v. CITY OF NEW YORK, et al. (2018 BCSC): $125,000 settlement for excessive force, illegal search, and false arrest resulting in permanent injury.
- COPES v. CITY OF NEW YORK, et al. (2017 SDNY): $30,000 settlement following a violent assault involving fists, batons, radios, and denial of medical care.
- M., A O/B/O HER MINOR SON, S., T. v. CITY OF NEW YORK, et al. (2020 SDNY): $20,000 settlement for an unlawful stop and search of a Black minor, involving racially biased comments and failure to provide required RTKA card.

34.     Despite these repeated allegations and confirmed violations—including misconduct directed at minors, Black and Latino men, and documented patterns of unlawful stops and excessive force—Defendant BRIAN P. MAHON has faced minimal disciplinary consequences and continues to hold supervisory authority within the NYPD.

35.     The NYPD's persistent failure to discipline, reassign, or retrain Defendant BRIAN P. MAHON despite substantiated misconduct, credibility warnings, and escalating legal exposure supports a claim of deliberate indifference and municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

36.     Defendant BRIAN P. MAHON's presence at the scene of Plaintiff JAYLIN RYAN's arrest, his active participation in the unlawful force used, and his racialized statements during and after the incident must be evaluated in light of this extensive misconduct history and the CITY OF NEW YORK's systemic failure to impose accountability.

**SUMMARY OF DEFENDANT JOEL K. AYALA'S HISTORY OF MISCONDUCT AND SYSTEMIC PATTERN OF ABUSE**

37.     Defendant JOEL K. AYALA, currently assigned as a Sergeant at the 46th Precinct, has an extensive and well-documented record of misconduct spanning over a decade of service in the New York City Police Department. Despite a pattern of substantiated abuses—including racially biased policing, unlawful stops, and excessive use of authority—Defendant JOEL K. AYALA continues to serve in a supervisory capacity with minimal accountability, reflecting the CITY OF NEW YORK's persistent failure to discipline repeat offenders.

38.     Defendant JOEL K. AYALA began his NYPD career in July 2013. Before his 2024 transfer to the 46th Precinct, he served in the 52nd Precinct, the Strategic Response Group, the Gun Violence Suppression Division (Zone 02), and Patrol Borough Bronx. He earned over $210,000 in public compensation during the year preceding the assault on Plaintiff JAYLIN RYAN.

39.     To date, Defendant JOEL K. AYALA has been the subject of at least 20 civilian complaints comprising 74 misconduct allegations, with 29 allegations substantiated by the Civilian Complaint Review Board (CCRB). Among the substantiated findings are:

- Abuse of Authority – Bias-Based Policing (Race and Color) (3)
- Abuse of Authority – Unlawful Stops (6)
- Abuse of Authority – Frisk (4)
- Abuse of Authority – Vehicle Stops and Searches (6)
- Improper Use of Body-Worn Camera (2)
- Failure to Provide Right to Know Act (RTKA) Card (3)
- Refusal to Provide Name or Shield Number (3)
- Unlawful Summons

40.     Many of these violations were committed against Black and Latino men and minors, and in multiple instances, the CCRB substantiated charges requiring formal discipline. In two pending disciplinary cases (CCRB Case Nos. 202310223 and 202309622), Defendant JOEL

K. AYALA is the subject of formal charges for racial profiling and bias-based policing, with

final disciplinary decisions pending before the NYPD's Administrative Prosecution Unit (APU).

41.    Beyond administrative misconduct, Defendant JOEL K. AYALA has been named

in at least twelve civil rights lawsuits, leading to $621,000 in taxpayer-funded settlements. These

cases include severe allegations of:

- Excessive force
- Illegal stops and searches
- False arrest and malicious prosecution
- Retaliation and prolonged unlawful detention

Notable cases include:

- Delgado v. City of New York (2020 BCSC): $335,000 settlement for false arrest, excessive force, and detention following a beating while face-down on the pavement.
- Franklin v. City of New York (2020 SDNY): $65,000 settlement after plaintiffs were stopped without cause by plainclothes officers, falsely charged, and one assaulted while in NYPD custody.
- Barnes v. City of New York (2019 BCSC): $40,000 settlement for false arrest, excessive detention, and malicious prosecution based on fabricated allegations.
- Plummer v. City of New York (2019 BCSC): $40,000 settlement involving aggressive stop and search, physical assault, and strip search.
- Rampersad v. City of New York (2018 BCSC): $37,500 settlement for unlawful detention, strip search, and physical and psychological injury.

42.    In many of these cases, Defendant JOEL K. AYALA's conduct was described as

unprovoked, racially charged, and part of a coordinated pattern of unconstitutional policing

behavior.

43.    The accumulation of substantiated CCRB complaints, pending formal charges for

racial profiling, numerous civil settlements, and continued supervisory assignments demonstrates

the CITY OF NEW YORK's deliberate indifference to patterns of abuse by its officers. Despite

actual and constructive notice, the CITY has allowed Defendant JOEL K. AYALA to remain in

the field with unsupervised discretion over the civil liberties of vulnerable populations.

44.     Defendant JOEL K. AYALA's conduct during the incident involving Plaintiff JAYLIN RYAN—specifically punching a restrained civilian in the face—must be evaluated within the context of this documented pattern of excessive force, racial bias, and credibility failures, and the CITY's repeated decisions to preserve his employment and promote him without meaningful corrective measures.

## SUMMARY OF DEFENDANT JAMES G. GEBERTH'S HISTORY OF MISCONDUCT AND OFFICIAL NEGLIGENCE

45.     Defendant JAMES G. GEBERTH is a Police Officer assigned to the 46th Precinct since May 2021. He joined the New York City Police Department in November 2020 and earned approximately $112,000 in public salary during the year prior to the incident involving Plaintiff JAYLIN RYAN. Despite his relatively short tenure in the NYPD, Defendant JAMES G. GEBERTH has already accumulated multiple civilian complaints, a substantiated abuse of authority finding, and has been named in several civil rights lawsuits.

46.     To date, Defendant JAMES G. GEBERTH has been named in at least three CCRB complaints involving seven misconduct allegations, one of which was substantiated. Specifically:

- In CCRB Case #202302519, Defendant JAMES G. GEBERTH was found to have violated the Right to Know Act (RTKA) by failing to provide proper identification and justification for a police encounter. The CCRB substantiated the allegation and recommended Command Discipline A. Despite this finding, the NYPD imposed no disciplinary penalty.

Additional complaints include allegations of:

- Physical force, including a force-related complaint involving restricted breathing (CCRB #202203606), and
- Forcible removal to a hospital using restraints, involving a Black female complainant aged 55–59 (CCRB #202301085), though these were either deemed within NYPD guidelines or marked "unable to determine."

47.    Even in this early stage of his career, Defendant JAMES G. GEBERTH has also been named in at least four known civil rights lawsuits, including:

- Molina v. City of New York (2023 BCSC): The case settled for $85,000 in public funds and involved alleged misconduct during an unlawful police encounter. While the underlying facts are sealed or redacted, the size of the settlement strongly indicates substantial harm and credible evidence of constitutional violations.

Other lawsuits in which Defendant JAMES G. GEBERTH has been named include:

- George v. City of New York (2024 BCSC)
- Moore v. City of New York (2024 BCSC)
- Villalongo v. City of New York (2023 BCSC)

48.    The pattern of litigation and CCRB discipline demonstrates that, even within a short window of service, Defendant JAMES G. GEBERTH has engaged in practices that violate NYPD policy, community trust, and constitutional standards.

49.    In the incident involving Plaintiff JAYLIN RYAN, Defendant JAMES G. GEBERTH not only filed a false summons for Disorderly Conduct despite the lack of probable cause but also failed to intervene in the excessive force used by fellow officers and discouraged EMTs from treating RYAN's visible injuries, in violation of his duty of care under both NYPD department guidelines, and prevailing constitutional law.

50.    The CITY OF NEW YORK's failure to meaningfully discipline or supervise Defendant JAMES G. GEBERTH—despite being on actual notice of substantiated misconduct—contributed to the unlawful conduct inflicted upon Plaintiff JAYLIN RYAN and supports the broader claim of deliberate indifference under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**SUMMARY OF DEFENDANT CRYSTAL L. DONES'S HISTORY OF MISCONDUCT AND ENABLING POLICIES**

51.     Defendant CRYSTAL L. DONES is a Hispanic female NYPD Police Officer currently assigned to the 46th Precinct. She has served in the NYPD since October 2017, including prior assignment at the 52nd Precinct. Despite her mid-level tenure, Defendant CRYSTAL L. DONES has accumulated a pattern of substantiated misconduct, credibility issues, and litigation exposure. In 2024, she earned approximately $229,000 in total compensation, reflecting significant overtime tied to frontline enforcement roles.

52.     As of the date of this Complaint, Defendant CRYSTAL L. DONES has been the subject of three CCRB complaints involving ten allegations, five of which were substantiated. These include:

- Abuse of Authority – Stop
- Abuse of Authority – Frisk
- Abuse of Authority – Failure to Provide RTKA Card
- Improper Use of Body-Worn Camera
- Discourtesy – Verbal Misconduct

53.     In CCRB Case #202308235, which involved a Hispanic male between the ages of 21–24, Defendant CRYSTAL L. DONES engaged in an unlawful stop and frisk, failed to properly activate or use her body-worn camera, and used discourteous language. The CCRB substantiated four separate violations and recommended Command Discipline B, resulting in a five-day vacation forfeiture.

54.     Another substantiated allegation involved failure to provide a Right to Know Act card, a statutory requirement under NYC law. The NYPD imposed no formal penalty for this violation, reinforcing a pattern of non-enforcement of internal accountability standards.

55.     In addition to her CCRB record, Defendant CRYSTAL L. DONES has been named in at least three civil rights lawsuits, generating $90,000 in known settlements. These include:

- Lopez v. City of New York (2020 SDNY): A $65,000 settlement following a violent, warrantless arrest of a civilian woman outside her own home. The plaintiff was slammed to the ground and allegedly had a firearm pointed at her while handcuffed and nonresistant. DONES was named as one of the responding officers.
- Crawford v. City of New York (2023 BCSC): A $25,000 settlement arising from Defendant CRYSTAL L. DONES's involvement in an unlawful stop and detention in the Bronx.

56.     Despite these repeated infractions and settlements, the CITY OF NEW YORK has continued to assign Defendant CRYSTAL L. DONES to frontline duties in high-activity precincts without restriction, supervision, or retraining. The absence of meaningful discipline despite verified misconduct involving both verbal abuse and constitutional violations supports a claim of deliberate indifference and ratification by CITY policymakers and NYPD command staff.

57.     During the incident involving Plaintiff JAYLIN RYAN, Defendant CRYSTAL L. DONES was present and failed to intervene while another officer Defendant JOEL K. AYALA punched the Plaintiff in the face while restrained. She also failed to report or prevent the filing of false summonses and the unlawful detention that followed. Her inaction, taken together with her prior substantiated abuses of authority, demonstrates both a pattern of unconstitutional conduct and the CITY's institutional tolerance of officer misconduct.

**SUMMARY OF DEFENDANT JOHN MICHAEL B. MEDINA'S HISTORY OF MISCONDUCT AND PATTERN OF NON-INTERVENTION**

58.     Defendant JOHN MICHAEL B. MEDINA is a Hispanic male NYPD Police Officer currently assigned to the 46th Precinct, where he has served since May 2021. He joined the New York City Police Department in November 2020. Despite his relatively recent entry into the Department, he has already been named in three civilian complaints, involving eight separate misconduct allegations, and was named as a defendant in a pending civil rights lawsuit.

59.     While none of the CCRB complaints have resulted in substantiated findings, four of the allegations were closed due to complainant non-cooperation, a frequent outcome in cases involving fear of retaliation, community distrust, or trauma. The CCRB's failure to substantiate does not, in itself, exonerate misconduct—particularly in cases with limited body-worn camera footage or lack of cooperation from key witnesses.

Representative allegations include:

- Use of Force – Vehicle Tactic (2023, CCRB Case #202311587)
- Unlawful Stop, Questioning, and Search (2023, CCRB Case #202307548)
- Forcible Hospital Removal and Threat of Arrest during a disputed premises entry (2021, CCRB Case #202201979)

60.     The NYPD closed two of the above cases by finding the conduct fell "within department guidelines", highlighting the Department's discretionary and often permissive internal standards for aggressive or coercive policing, especially in precincts with historically high levels of force complaints.

61.     In addition to CCRB complaints, Defendant JOHN MICHAEL B. MEDINA has been named as a defendant in a pending civil lawsuit, Jimenez v. City of New York, et al., filed in Bronx Supreme Court on SEPTEMBER 22, 2023 (Index No. 814546/2023E). While the complaint remains pending, it contributes to the developing picture of Defendant JOHN MICHAEL B. MEDINA's involvement in high-risk encounters with potentially unconstitutional conduct.

62.     During the incident involving Plaintiff JAYLIN RYAN, Defendant JOHN MICHAEL B. MEDINA was present at the scene when officers—including his supervisor and a fellow officer—used excessive force, filed false summonses, and made racially charged statements. Despite witnessing these clear constitutional violations, Defendant JOHN MICHAEL B. MEDINA took no action to intervene, prevent, or report the unlawful conduct—a dereliction

of his affirmative duty under well-established federal law, including *Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016).

63.    Though his misconduct history is less extensive than others named in this Complaint, Defendant JOHN MICHAEL B. MEDINA's failure to intervene and complicity in silence are consistent with NYPD patterns of blue wall non-interventionism and reflect systemic failures in officer supervision, accountability, and remedial training.

64.    The CITY OF NEW YORK's continued employment and deployment of Defendant JOHN MICHAEL B. MEDINA in unsupervised street-level enforcement—despite his role in this and other high-risk encounters—supports Plaintiff JAYLIN RYAN's claims of municipal liability under Monell and systemic failure to detect and deter unconstitutional policing.

**SUMMARY OF DEFENDANT PATRICK JEAN'S HISTORY OF MISCONDUCT AND CONSTITUTIONAL VIOLATIONS**

65.    Defendant PATRICK JEAN is a Black male NYPD Police Officer assigned to the 46th Precinct Detective Squad as of April 2025, with prior assignments in the 46th and 52nd Precincts. He joined the New York City Police Department in December 2020 and earned approximately $97,200 in the year prior to his promotion. Despite his relatively short tenure, Defendant PATRICK JEAN has already developed a record of substantiated misconduct, including violations of constitutional protections during vehicle stops and searches.

66.    To date, Defendant PATRICK JEAN has been the subject of at least two civilian complaints, totaling five misconduct allegations, three of which were substantiated by the Civilian Complaint Review Board (CCRB). These findings include:

- Abuse of Authority – Failure to Explain Purpose of Encounter
- Abuse of Authority – Failure to Provide RTKA Card
- Abuse of Authority – Improper Vehicle Search

67.    All three substantiated allegations occurred in a single encounter with a senior male civilian (age 70–74) and resulted in a finding of Command Discipline A. The NYPD imposed only minor internal discipline, despite the encounter involving multiple statutory and constitutional violations under New York City's Right to Know Act (Admin. Code § 14-174) and the Fourth Amendment.

68.    Another CCRB case involving a stop and search of a Dominican male aged 18–20 was closed due to complainant unavailability, a common resolution pattern in street-level policing misconduct cases involving young men of color.

69.    In addition to administrative discipline, Defendant PATRICK JEAN has been named in three civil rights lawsuits, one of which resulted in a $120,000 taxpayer-funded settlement:

- Bryan v. City of New York (2023 BCSC): Defendant PATRICK JEAN was named as a defendant in a case involving a warrantless stop and search, physical restraint, and unlawful detention. The case settled in December 2023 for $120,000.

Other pending litigation includes:

- Shkreli v. City of New York (2023 SDNY)
- West & Torres v. City of New York (2024 BCSC)

70.    The disciplinary and litigation history of Defendant PATRICK JEAN demonstrates repeated violations of civilian rights during low-level encounters, particularly traffic and pedestrian stops. The CITY OF NEW YORK's failure to impose meaningful discipline, retraining, or supervisory intervention in response to these incidents reflects a deliberate indifference to recurring violations of constitutional and statutory protections.

71.    In the incident involving Plaintiff JAYLIN RYAN, Defendant PATRICK JEAN issued two traffic summonses post facto—one for double parking and another for parking near a

fire hydrant—in an apparent effort to retroactively justify a stop that lacked probable cause. These retaliatory citations were issued after Plaintiff JAYLIN RYAN had already been violently arrested and assaulted, further supporting the allegation of retaliatory animus in violation of the First and Fourth Amendments.

72.    Defendant PATRICK JEAN's conduct in this case—coupled with his prior substantiated misconduct and history of unlawful vehicle enforcement—illustrates the systemic nature of unconstitutional street-level policing practices in the 46th Precinct and the CITY's failure to deter such practices through proper oversight.

### NYPD STATISTICAL DATA

To assess potential disparities in NYPD vehicle stops during the fourth quarter of 2024, we can compare the racial distribution of these stops to New York City's overall demographic composition.

**Racial Composition of NYPD Vehicle Stops (Q4 2024):**

- Black: 29.8%
- Hispanic: 29%
- White: 17.8%
- Asian/Pacific Islander: 12.3%
- Other/Unknown: 11.1%

**New York City Demographics:**

- White: 35.9%
- Black: 22.7%
- Hispanic or Latino: 28.4%
- Asian: 14.6%

*Source: U.S. Census Bureau QuickFacts for New York City*

**Analysis:**

- **Black Residents:** Although comprising 22.7% of the city's population, Black individuals accounted for 29.8% of vehicle stops, indicating a potential overrepresentation.
- **Hispanic Residents:** Hispanic or Latino individuals comprise 28.4% of the population and represent 29% of vehicle stops, suggesting a proportionate representation.

- **White Residents:** Although white individuals constitute 35.9% of the population, they accounted for only 17.8% of vehicle stops, indicating a potential underrepresentation.
- **Asian Residents:** Asians represent 14.6% of the population and 12.3% of vehicle stops, suggesting a slight underrepresentation.

73.    The data suggests that Black residents are stopped at a higher rate relative to their share of the population, while White residents are stopped at a lower rate. These disparities may indicate potential biases in traffic enforcement practices. Further analysis, considering factors such as driving patterns and law enforcement deployment, would be necessary to draw definitive conclusions.

### FINDINGS FROM THE FLOYD MONITOR'S 23RD REPORT

The Floyd Monitor's 23rd Report, which assesses NYPD's compliance with court-ordered reforms following the landmark Floyd v. City of New York case, provides compelling evidence of systemic constitutional violations by the NYPD. The report's findings further substantiate the legal claims asserted in this matter, particularly regarding racial profiling, unconstitutional stops, and failures in NYPD supervision.

**A. Widespread Unconstitutional Stops and Searches**
- The report found that only 75% of Neighborhood Safety Teams (NSTs) stops were lawful, compared to 92% of regular patrol officers.
- Only 58% of frisks and 54% of searches conducted by NST officers were lawful, meaning that nearly half of all frisks and searches lacked legal justification.
- NST officers disproportionately targeted Black and Latino individuals while engaging in self-initiated stops without reasonable suspicion.

**B. Systemic Racial Disparities in Enforcement**
- 95% of stop reports and 93% of body-worn camera (BWC) footage involved Black or Hispanic individuals, reinforcing a pattern of racial profiling.
- Despite these apparent racial disparities, NYPD supervisors failed to address or rectify the department's unconstitutional practices.
- Supervisors approved 99.1% of stop reports as "lawful," even when independent audits found many unconstitutional.

**C. Supervisory Failures and Institutional Negligence**
- Supervisors routinely failed to identify racial profiling or unconstitutional stops.
- NYPD officers engaged in unlawful self-initiated stops 70% of the time, indicating a lack of proper oversight.
- The report found that NYPD leadership had systemically ignored evidence of unconstitutional conduct, permitting ongoing civil rights violations.

74. The findings from the Floyd Monitor's 23rd Report, in conjunction with statistical analysis of NYPD vehicle stops, provide compelling evidence of systemic racial profiling, unconstitutional stops, and supervisory failures within the NYPD. This evidence directly supports the legal claims asserted in this case, reinforcing constitutional violations and the City of New York's liability under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, Monell liability doctrine, and the NYC Human Rights Law (Administrative Code § 8-107).

75. The Floyd Monitor's findings confirm that NYPD officers routinely conduct stops without reasonable suspicion, disproportionately targeting Black and Latino individuals, which constitutes a clear violation of the Fourth Amendment's protections against unlawful searches and seizures.

76. The systemic racial disparities in NYPD traffic stops are not coincidental but reflective of a pattern of unconstitutional and discriminatory policing practices, violating the Equal Protection Clause of the Fourteenth Amendment.

77. The failure of NYPD supervisors and leadership to correct or address these unconstitutional practices demonstrates a deliberate indifference to civil rights violations, meeting the legal standard for municipal liability under Monell v. Department of Social Services.

78. The NYPD's documented failure to intervene, correct, or discipline officers engaging in racial profiling further substantiates violations of New York City Human Rights Law (Administrative Code § 8-107), which prohibits discriminatory policing.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS – UNLAWFUL SEIZURE AND FALSE ARREST
### (42 U.S.C. § 1983)
### AGAINST DEFENDANTS BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, PATRICK JEAN, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, and JOHN DOES 1–5

79.     Plaintiff JAYLIN RYAN repeats and realleges each and every preceding paragraph as if fully set forth herein.

80.     The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. The Fourteenth Amendment extends this protection against such conduct by state and municipal actors.

81.     At the time of the incident, Plaintiff JAYLIN RYAN was standing lawfully on a public street beside his mother's parked vehicle, having committed no crime or infraction. Defendants lacked probable cause or even reasonable suspicion to detain or arrest him.

82.     Despite the absence of any lawful basis, Defendants BRIAN P. MAHON and JOEL K. AYALA approached Plaintiff in a confrontational manner, demanded identification without cause, and—when Plaintiff calmly inquired about the basis of their stop—violently seized him, slammed him against a vehicle, and handcuffed him without justification.

83.     Defendant JAMES G. GEBERTH then issued a criminal summons charging Plaintiff with Disorderly Conduct under Penal Law § 240.20(7), falsely stating that Plaintiff "refused a lawful order to provide his driver's license" and "stated he had a license but was not going to present it." These factual allegations, signed under penalty of perjury, were materially false and legally insufficient to support the charge.

84.    Penal Law § 240.20(7) prohibits the creation of a "hazardous or physically offensive condition" without legitimate purpose. Merely refusing to produce a license—particularly where no lawful order was issued—is not a violation of this statute and cannot support a lawful arrest.

85.    The arrest and criminal charge were effectuated without probable cause, rendering them unlawful seizures in violation of Plaintiff's Fourth and Fourteenth Amendment rights.

86.    Defendants CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, PATRICK JEAN, and JOHN DOES 1–5 were present for the unlawful arrest and had the legal duty and opportunity to prevent the violation of Plaintiff's constitutional rights, but failed to do so.

87.    As a direct and proximate result of the unlawful arrest and seizure, Plaintiff suffered loss of liberty, physical pain, emotional distress, reputational harm, and other damages cognizable under 42 U.S.C. § 1983.

88.    Plaintiff JAYLIN RYAN seeks judgment against Defendants BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, PATRICK JEAN, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, and JOHN DOES 1–5 for compensatory damages, punitive damages, attorneys' fees, and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS –**
**EXCESSIVE FORCE**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS BRIAN P. MAHON, JOEL K. AYALA, JAMES G.**
**GEBERTH, PATRICK JEAN, CRYSTAL L. DONES,**
**JOHN MICHAEL B. MEDINA, and JOHN DOES 1–5**

89.    Plaintiff JAYLIN RYAN repeats and realleges each and every preceding paragraph as if fully set forth herein.

90.     The Fourth Amendment prohibits the use of unreasonable or excessive force by law enforcement officers during the course of a seizure. The Fourteenth Amendment guarantees due process and bodily integrity, and prohibits state actors from inflicting unjustified harm on individuals in custody.

91.     At the time of the incident, Plaintiff JAYLIN RYAN was compliant, unarmed, and posed no threat to the officers or the public. He was peacefully standing beside his mother's vehicle, awaiting confirmation that a female friend had safely entered her building.

92.     Without provocation or legal justification, Defendant BRIAN P. MAHON and other NYPD officers seized Plaintiff, violently slammed him against a vehicle, and handcuffed him. During this seizure, while Plaintiff was physically restrained by multiple officers and posed no threat, Defendant JOEL K. AYALA punched him with a closed fist on the right side of his face, inflicting immediate and serious injury.

93.     Plaintiff JAYLIN RYAN experienced intense pain, facial swelling, and difficulty speaking and chewing. He later sought emergency medical treatment and was diagnosed with a fractured jaw—an injury entirely consistent with blunt force trauma caused by a closed-fist blow while in custody.

94.     Defendants JAMES G. GEBERTH, PATRICK JEAN, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, and JOHN DOES 1–5 was present during the assault. Despite having the opportunity and legal duty to intervene, they stood by and failed to prevent or report the excessive force inflicted on Plaintiff JAYLIN RYAN.

95.     The force used against Plaintiff JAYLIN RYAN was not objectively reasonable under the circumstances and served no law enforcement purpose. It was punitive, retaliatory, and inflicted maliciously and sadistically to cause harm.

96.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

JAYLIN RYAN suffered physical injury, medical expenses, emotional distress, mental anguish,

and other damages actionable under 42 U.S.C. § 1983.

97.     Plaintiff JAYLIN RYAN seeks judgment against Defendants BRIAN P.

MAHON, JOEL K. AYALA, JAMES G. GEBERTH, PATRICK JEAN, CRYSTAL L. DONES,

JOHN MICHAEL B. MEDINA, and JOHN DOES 1–5 for compensatory damages, punitive

damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further

relief as this Court deems just and proper.

### COUNT III
### FAILURE TO INTERVENE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
### (42 U.S.C. § 1983)
### AGAINST AGAINST DEFENDANTS BRIAN P. MAHON, JAMES G. GEBERTH, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, PATRICK JEAN, and JOHN DOES 1–5

98.     Plaintiff JAYLIN RYAN repeats and realleges each and every preceding

paragraph as if fully set forth herein.

99.     Law enforcement officers have an affirmative duty under the United States

Constitution to intervene and prevent fellow officers from violating an individual's constitutional

rights, including protection against excessive force, false arrest, fabrication of evidence, denial of

medical care, and racially discriminatory policing.

100.    During the early morning hours of December 28, 2024, Defendants BRIAN P.

MAHON, JAMES G. GEBERTH, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA,

PATRICK JEAN, and JOHN DOES 1–5 were present when Plaintiff JAYLIN RYAN was

unlawfully stopped, thrown against a vehicle, and restrained without probable cause.

101.     While Plaintiff JAYLIN RYAN was fully restrained and presented no threat, Defendant JOEL K. AYALA punched him in the face with a closed fist. The blow caused significant injury, including a fractured jaw later confirmed through medical imaging. Defendants MAHON, DONES, MEDINA, GEBERTH, JEAN, and JOHN DOES 1–5 stood nearby and witnessed the assault without intervening or rendering aid.

102.     Thereafter, Defendant JAMES G. GEBERTH issued a false summons under penalty of perjury, knowingly stating facts that were fabricated and legally insufficient to establish a violation of Penal Law § 240.20(7). Despite knowing this, none of the other named officers—including MAHON, DONES, MEDINA, JEAN, and GEBERTH—took steps to void the unlawful arrest or correct the official record, despite being obligated to do so under NYPD protocols and constitutional law.

103.     Defendants further failed to ensure Plaintiff JAYLIN RYAN received medical treatment, delayed emergency care, and permitted the transport of Plaintiff without appropriate clinical evaluation—even after observing his facial injuries and hearing repeated complaints of pain.

104.     Each of the Defendants had an opportunity to intervene, possessed actual or constructive knowledge of the misconduct occurring in real time, and chose to remain silent. Their inaction constitutes deliberate indifference and renders them liable for the resulting constitutional injuries.

105.     As a direct and proximate result of the failure to intervene by Defendants BRIAN P. MAHON, JAMES G. GEBERTH, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, PATRICK JEAN, and JOHN DOES 1–5, Plaintiff JAYLIN RYAN suffered physical injury,

emotional trauma, reputational damage, deprivation of liberty, and other compensable harms actionable under 42 U.S.C. § 1983.

106.    Plaintiff JAYLIN RYAN seeks judgment against the above-named Defendants for compensatory damages, punitive damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems just and proper.

**COUNT IV**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS –**
**FABRICATION OF EVIDENCE AND MALICIOUS PROSECUTION**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS JAMES G. GEBERTH, BRIAN P. MAHON, AND JOHN**
**DOES 1–5**

107.    Plaintiff JAYLIN RYAN repeats and realleges each and every preceding paragraph as if fully set forth herein.

108.    Defendants JAMES G. GEBERTH and BRIAN P. MAHON, acting under color of law, fabricated material evidence and caused Plaintiff to be prosecuted on false charges in violation of his Fourth and Fourteenth Amendment rights.

109.    In Summons No. 4447558422, signed under penalty of perjury, Defendant JAMES G. GEBERTH falsely alleged that Plaintiff "refused lawful order to provide driver's license" and "stated he had a license, but was not going to present it." These statements were knowingly false and intended to justify an arrest that lacked probable cause.

110.    Even if credited, the conduct described in the summons does not satisfy the elements of New York Penal Law § 240.20(7), which requires the creation of a "hazardous or physically offensive condition" without legitimate purpose.

111.    Defendant BRIAN P. MAHON, the supervising officer on scene, had actual knowledge that no disorderly conduct had occurred and failed to void the arrest, despite departmental policy requiring correction of false charges.

112.    Plaintiff was required to appear in Bronx Criminal Court under Docket No. 2025SX000434 to answer to the fabricated charges. On January 16, 2025, a judge summarily dismissed the disorderly conduct charge for legal insufficiency.

113.    Under *Thompson v. Clark*, 596 U.S. 36 (2022), Plaintiff need not demonstrate affirmative exoneration, but only that the proceeding ended in a manner not inconsistent with innocence. The judicial dismissal here satisfies that standard.

114.    Defendants initiated and continued a prosecution without probable cause, relying on fabricated evidence, and with retaliatory and punitive motive arising from Plaintiff's protected refusal to comply with an unlawful order.

115.    As a direct and proximate result of Defendants' actions, Plaintiff JAYLIN RYAN suffered a deprivation of liberty, emotional distress, reputational harm, financial expense, and other damages cognizable under 42 U.S.C. § 1983.

116.    Plaintiff JAYLIN RYAN seeks judgment against Defendants JAMES G. GEBERTH, BRIAN P. MAHON, and JOHN DOES 1–5 for compensatory damages, punitive damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

**COUNT V**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS –**
**DENIAL OF MEDICAL CARE**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS BRIAN P. MAHON, JOEL K. AYALA, JAMES G.**
**GEBERTH, PATRICK JEAN, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA,**
**and JOHN DOES 1–5**

117.    Plaintiff JAYLIN RYAN repeats and realleges each and every preceding paragraph as if fully set forth herein.

118.    The Constitution guarantees individuals in police custody the right to adequate medical care under the Fourth and Fourteenth Amendments. Law enforcement officers who are aware of a detainee's serious medical need and fail to provide or arrange timely care violate clearly established constitutional rights.

119.    On December 28, 2024, after being violently seized and punched in the face while physically restrained, Plaintiff JAYLIN RYAN complained of severe facial pain, swelling, and difficulty speaking and chewing. He repeatedly requested medical attention while detained at the 46th Precinct.

120.    Despite these visible signs of injury and Plaintiff JAYLIN RYAN's continued pleas for medical assistance, Defendant JAMES G. GEBERTH delayed calling for emergency medical services. When EMTs eventually arrived, Defendant GEBERTH actively discouraged treatment by telling them that Plaintiff would be released shortly and that his mother was present.

121.    Defendant BRIAN P. MAHON, who witnessed the assault and the resulting injury, took no action to ensure that Plaintiff received appropriate medical attention. As the supervising officer on scene and at the precinct, Defendant MAHON was responsible for Plaintiff's care and custody and acted with deliberate indifference to his medical needs.

122.    Defendants PATRICK JEAN, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, and JOHN DOES 1–5 was also present during and after the use of force and witnessed Plaintiff's condition. Despite this, none took reasonable steps to summon medical care, notify a supervisor, or advocate for Plaintiff's treatment. Their failure to act was a violation of their constitutional duty to safeguard the health and safety of persons in their custody.

123.    Following his release, Plaintiff JAYLIN RYAN immediately sought medical care at Lincoln Hospital in the Bronx, where he was diagnosed with a fractured jaw consistent with

blunt force trauma. This injury required clinical evaluation, pain management, and a restricted diet due to difficulty chewing and speaking.

124.    The delay and denial of treatment exacerbated Plaintiff JAYLIN RYAN's pain and suffering and constituted a deprivation of rights guaranteed under the Fourth and Fourteenth Amendments.

125.    As a direct and proximate result of Defendants' deliberate indifference, Plaintiff JAYLIN RYAN suffered preventable pain, emotional distress, prolonged injury, and other compensable damages under 42 U.S.C. § 1983.

126.    Plaintiff JAYLIN RYAN seeks judgment against Defendants BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, PATRICK JEAN, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, and JOHN DOES 1–5 for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other relief as this Court deems just and proper.

**COUNT VI**
**VIOLATION OF THE FOURTEENTH AMENDMENT –**
**EQUAL PROTECTION: RACIAL PROFILING**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS BRIAN P. MAHON, JOEL K. AYALA, JAMES G.**
**GEBERTH, PATRICK JEAN, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA,**
**and JOHN DOES 1–5**

127.    Plaintiff JAYLIN RYAN repeats and realleges each and every preceding paragraph as if fully set forth herein.

128.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits state actors, including law enforcement officers, from engaging in discriminatory enforcement or selective treatment of individuals based on race.

129.    On December 28, 2024, Plaintiff JAYLIN RYAN, a young Black man, was standing beside his mother's vehicle—a Mercedes-Benz GLS SUV with tinted windows—briefly double-parked outside 187 East 188th Street in the Bronx. He was not engaged in any criminal activity and posed no threat to public safety.

130.    Despite the absence of any legal justification, Defendants BRIAN P. MAHON and JOEL K. AYALA approached Plaintiff in an aggressive manner and demanded identification. When Plaintiff asked, "What did I do wrong?", he was thrown against the vehicle, handcuffed, and later punched in the face.

131.    During the transport to the precinct, Defendant MAHON stated, "This is what happens if you do not give the police what they ask for; you'll get punched in the face." At the precinct, when confronted by Plaintiff's mother, Defendant MAHON further declared: "He's a Black kid driving a Mercedes-Benz, and the windows are all tinted. Vehicles like that—they [police] search for drugs and guns."

132.    These explicit racialized statements demonstrate that the stop, detention, and use of force were motivated not by any lawful suspicion of wrongdoing, but by Plaintiff's race, perceived socioeconomic status, and location.

133.    In evaluating whether the racially disparate treatment of Plaintiff JAYLIN RYAN violated the Equal Protection Clause, the Court may consider the factors outlined by the Supreme Court in *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252 (1977), which include: (1) the historical background of the decision; (2) the specific sequence of events leading up to the challenged action; (3) departures from the normal procedural sequence; (4) substantive departures from factors usually considered; and (5) legislative or administrative history, especially contemporary statements by decisionmakers. Here, Defendant BRIAN P.

MAHON's racially charged statements—including "He's a Black kid driving a Mercedes-Benz, and the windows are all tinted. Vehicles like that—they [police] search for drugs and guns"— made at the time of arrest and again when confronted at the precinct, constitute direct, contemporaneous statements by a decisionmaker involved in the stop and arrest. His remarks, coupled with the fabricated summons and the failure to follow department procedures, serve as compelling evidence of discriminatory intent under the *Arlington Heights* framework.

134.    Other Defendants—including GEBERTH, DONES, MEDINA, and JEAN—were present at the scene, participated in the unlawful arrest, and/or failed to intervene, despite being aware of the racialized basis for the encounter.

135.    The discriminatory treatment of Plaintiff JAYLIN RYAN is consistent with a broader pattern of racial profiling and disparate policing practices by the NYPD, particularly in communities of color. This includes but is not limited to disproportionate stops, searches, and use of force against Black and Latino individuals, as documented in the Floyd Monitor's 23rd Report and NYPD's own stop data for Q4 2024.

136.    As a direct and proximate result of the racial profiling and unequal treatment, Plaintiff suffered constitutional injury, emotional distress, reputational harm, and other damages cognizable under 42 U.S.C. § 1983.

137.    Plaintiff JAYLIN RYAN seeks judgment against Defendants BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, PATRICK JEAN, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, and JOHN DOES 1–5 for compensatory damages, punitive damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

## COUNT VII
## VIOLATION OF THE FIRST AMENDMENT –
## RETALIATION FOR PROTECTED EXPRESSION
## (42 U.S.C. § 1983)
## AGAINST DEFENDANTS BRIAN P. MAHON, JOEL K. AYALA, JAMES G.
## GEBERTH, PATRICK JEAN, and JOHN DOES 1–5

138.    Plaintiff JAYLIN RYAN repeats and realleges each and every preceding

paragraph as if fully set forth herein.

139.    The First Amendment to the United States Constitution protects individuals from

government retaliation for engaging in constitutionally protected speech, including the right to

question police authority and to remain silent when not lawfully obligated to respond.

140.    On December 28, 2024, Plaintiff JAYLIN RYAN was approached by NYPD

officers, including Defendants MAHON and AYALA, and was ordered to produce identification

without any lawful basis. Plaintiff peacefully and lawfully asked, "What did I do wrong?", which

was met with violence and immediate arrest.

141.    Rather than provide a lawful explanation or disengage, Defendants escalated the

encounter in retaliation for Plaintiff's protected expression. Defendant MAHON seized Plaintiff

and later stated: "This is what happens if you do not give the police what they ask for; you'll get

punched in the face."

142.    This comment was an explicit admission that the use of force and arrest were

retaliatory, not based on lawful enforcement objectives, but intended to punish Plaintiff for

asserting his constitutional rights.

143.    Subsequently, Defendant GEBERTH issued a knowingly false summons under

Penal Law § 240.20(7), fabricating allegations that Plaintiff refused a lawful order to provide his

license—further demonstrating retaliatory animus.

144.    Defendant JEAN then issued two additional parking tickets—one for double parking and one for parking near a fire hydrant—after Plaintiff had already been unlawfully arrested and removed from the scene. These tickets were post hoc, retaliatory measures designed to justify the original misconduct and to punish Plaintiff for asserting his rights.

145.    The sequence of events, the statements made by Defendant MAHON, and the fabricated charges and tickets demonstrate that Defendants acted with retaliatory motive against Plaintiff JAYLIN RYAN for engaging in protected First Amendment expression.

146.    As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered violations of his constitutional rights, emotional distress, reputational injury, loss of liberty, and other damages actionable under 42 U.S.C. § 1983.

147.    Plaintiff JAYLIN RYAN seeks judgment against Defendants BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, PATRICK JEAN, and JOHN DOES 1–5 for compensatory damages, punitive damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

## COUNT VIII
## MUNICIPAL LIABILITY – POLICY, PRACTICE, AND CUSTOM
### (Monell Claim – 42 U.S.C. § 1983)
### AGAINST DEFENDANT THE CITY OF NEW YORK

148.    Plaintiff JAYLIN RYAN repeats and realleges each and every preceding paragraph as if fully set forth herein.

149.    At all relevant times, Defendant THE CITY OF NEW YORK, through its agency the New York City Police Department (NYPD), maintained policies, practices, customs, and usages that directly caused the violation of Plaintiff's constitutional rights as described herein.

150.    Defendant THE CITY OF NEW YORK had actual and constructive knowledge that NYPD officers—including those assigned to the 46th Precinct—engaged in a recurring

pattern of unlawful seizures, excessive force, fabrication of evidence, racial profiling, and failure to intervene in constitutional violations. These practices disproportionately affected Black and Latino civilians, and were repeatedly documented in litigation, Civilian Complaint Review Board (CCRB) records, internal NYPD audits, and third-party oversight reports.

151.    For over a decade, the NYPD has been the subject of litigation and federal court monitoring arising from its unconstitutional stop-and-frisk practices, as adjudicated in *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013). Despite findings of widespread racial profiling and violations of the Fourth and Fourteenth Amendments, the City has failed to implement sufficient reforms to correct these systemic deficiencies.

152.    The Floyd Monitor's 23rd Report, released prior to the events in this case, concluded that: Nearly half of all frisks and searches conducted by Neighborhood Safety Team (NST) officers lacked legal justification; 95% of stops and 93% of body-worn camera footage involved Black or Latino civilians.

153.    Supervisors failed to identify or correct unconstitutional behavior and approved over 99% of stop reports regardless of legal sufficiency.

154.    Statistical data from the NYPD's Q4 2024 vehicle stop reports revealed stark racial disparities.

155.    Black individuals represented only 22.7% of the population but accounted for 29.8% of vehicle stops.

156.    White individuals represented 35.9% of the population but only 17.8% of stops.

157.    Black and Latino drivers were disproportionately subjected to investigatory stops and enforcement, even in the absence of articulable suspicion.

158.    Plaintiff's unlawful seizure and arrest occurred within this broader pattern. He was subjected to racially motivated treatment while standing beside his mother's vehicle—a Mercedes-Benz GLS SUV with tinted windows—in a predominantly Black and Latino neighborhood. The stop escalated without lawful justification, culminating in the use of force and the issuance of fabricated charges.

159.    During the incident, Defendant BRIAN P. MAHON stated: "He's a Black kid driving a Mercedes-Benz, and the windows are all tinted. Vehicles like that—they [police] search for drugs and guns."

160.    This contemporaneous admission constitutes direct evidence of racial animus and supports a finding of discriminatory intent under the framework set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).

161.    The decision to arrest and charge Plaintiff with Disorderly Conduct under Penal Law § 240.20(7), without probable cause, and based on fabricated statements, was ratified by multiple NYPD supervisors and command-level officials who failed to void the arrest despite knowledge of its falsity. These included the desk officer at the 46th Precinct and Defendant BRIAN P. MAHON.

162.    Defendant THE CITY OF NEW YORK has routinely failed to discipline, retrain, or remove officers with long records of substantiated misconduct. Defendants MAHON, AYALA, DONES, and others named herein each have extensive CCRB histories and have been named in civil rights lawsuits, yet continue to be assigned to high-enforcement precincts with minimal supervision.

163.    These omissions, ratifications, and institutional failures demonstrate a policy or custom of deliberate indifference to constitutional rights and unlawful policing practices.

164.    The conduct of NYPD officers in this case was not an aberration but the product of systemic failures in training, supervision, and accountability fostered by Defendant THE CITY OF NEW YORK.

165.    This individual instance of racial profiling is emblematic of the broader patterns of bias-based policing and supervisory indifference detailed in Plaintiff's Monell claim.

166.    As a direct and proximate result of the customs, policies, and deliberate indifference of Defendant THE CITY OF NEW YORK, Plaintiff JAYLIN RYAN suffered physical injury, deprivation of liberty, emotional distress, reputational harm, and other compensable damages actionable under 42 U.S.C. § 1983.

167.    Plaintiff JAYLIN RYAN seeks judgment against Defendant THE CITY OF NEW YORK for compensatory damages, declaratory relief, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**COUNT IX**
**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW –**
**BIAS-BASED POLICING**
**(N.Y.C. Admin. Code § 8-107(17))**
**AGAINST DEFENDANTS THE CITY OF NEW YORK, BRIAN P. MAHON, JOEL K.**
**AYALA, JAMES G. GEBERTH, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA,**
**PATRICK JEAN, and JOHN DOES 1–5**

168.    Plaintiff JAYLIN RYAN repeats and realleges each and every preceding paragraph as if fully set forth herein.

169.    Section 8-107(17) of the New York City Human Rights Law prohibits law enforcement officers from engaging in bias-based profiling, defined as actions taken against an individual based on actual or perceived race, color, or ethnicity, among other protected characteristics, rather than reasonable suspicion or probable cause.

170.    On December 28, 2024, Defendants BRIAN P. MAHON, JOEL K. AYALA, and JAMES G. GEBERTH unlawfully stopped, detained, used force against, and fabricated criminal charges against Plaintiff JAYLIN RYAN, a 21-year-old Black male, without legal justification and based, at least in part, on racial stereotypes and bias.

171.    Defendant MAHON explicitly stated during the arrest, "He's a Black kid driving a Mercedes-Benz, and the windows are all tinted. Vehicles like that—they [police] search for drugs and guns." This statement demonstrates that Plaintiff was subjected to differential treatment based on his race and appearance, not any articulable suspicion of criminal wrongdoing.

172.    Defendants CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, PATRICK JEAN, and JOHN DOES 1–5 were present, witnessed the unlawful conduct, and failed to intervene, report, or deescalate. Instead, they allowed the racially motivated arrest and use of force to proceed without challenge.

173.    Defendant PATRICK JEAN issued two traffic summonses post hoc—after Plaintiff was arrested and transported to the precinct—for double parking and parking near a fire hydrant. These tickets appear to have been retaliatory and issued to retroactively justify the unlawful stop and arrest.

174.    Defendant JAMES G. GEBERTH issued Summons No. 4447558422 falsely alleging Plaintiff refused a lawful order to provide identification, a claim unsupported by body-worn camera evidence or legal authority under Penal Law § 240.20(7). His participation in the fabrication of criminal charges was motivated, at least in part, by the same discriminatory animus expressed by Defendant MAHON.

175.    Defendant THE CITY OF NEW YORK is liable for the acts and omissions of its employees under N.Y.C. Admin. Code § 8-107(13)(b), as the officers were acting within the scope of their employment and pursuant to the customs and practices of the New York City Police Department.

176.    The CITY OF NEW YORK had actual and constructive notice of the discriminatory nature of the incident through direct reports to senior leadership, including Mayor ERIC L. ADAMS and NYPD command staff. Despite this notice, the CITY took no disciplinary, investigative, or corrective action.

177.    The CITY's failure to discipline, retrain, or even acknowledge the misconduct constitutes deliberate indifference and ratification under the NYCHRL's broad remedial framework. See Williams v. New York City Housing Auth., 61 A.D.3d 62 (1st Dep't 2009).

178.    Plaintiff is not required to prove but-for causation under the NYCHRL. It is sufficient that race was a motivating factor in the officers' conduct and decisions.

179.    As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff JAYLIN RYAN suffered emotional distress, humiliation, reputational harm, lost liberty, and other compensable injuries within the meaning of N.Y.C. Admin. Code § 8-502(a).

180.    Plaintiff JAYLIN RYAN seeks judgment against Defendants THE CITY OF NEW YORK, BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, PATRICK JEAN, and JOHN DOES 1–5 for compensatory damages, punitive damages (as permitted under the NYCHRL), reasonable attorneys' fees and costs pursuant to N.Y.C. Admin. Code § 8-502(f), and such other and further relief as this Court deems just and proper.

## **JURY TRIAL**

181.    Plaintiff JAYLIN RYAN demands a trial by jury of all issues in this action that

are so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JAYLIN RYAN respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. On all federal claims brought pursuant to 42 U.S.C. § 1983, including violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution, an award of compensatory damages against Defendants THE CITY OF NEW YORK, BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, PATRICK JEAN, and JOHN DOES 1–5, in an amount to be determined at trial;

B. An award of punitive damages against the individual Defendants—BRIAN P. MAHON, JOEL K. AYALA, JAMES G. GEBERTH, CRYSTAL L. DONES, JOHN MICHAEL B. MEDINA, PATRICK JEAN, and JOHN DOES 1–5—in an amount sufficient to punish and deter future constitutional violations;

C. On the Monell claim for municipal liability under 42 U.S.C. § 1983, a finding of liability against Defendant THE CITY OF NEW YORK for maintaining unconstitutional customs, practices, and policies that were a moving force behind the violations of Plaintiff's rights;

D. On the claims brought under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(17), an award of compensatory damages and, where applicable, punitive damages against all Defendants for discriminatory profiling and selective enforcement based on race;

E. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and N.Y.C. Admin. Code § 8-502(f);

F. A declaratory judgment that the acts and omissions of Defendants violated Plaintiff's clearly established rights under the Constitution and laws of the United States and New York City;

G. Prejudgment and post-judgment interest as permitted by law; and

H. Such other and further relief as this Court deems just and proper.

Dated:  April 15, 2025
      New York, NY

                        Respectfully submitted,

                        By:           _____s/Eric Sanders_____
                                Eric Sanders

                        Eric Sanders, Esq.
                        **THE SANDERS FIRM, P.C.**
                        30 Wall Street, 8th Floor
                        New York, NY 10005
                        (212) 652-2782 (Business Telephone)
                        (212) 652-2783 (Facsimile)

                        Website: http://www.thesandersfirmpc.com